UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TZ MANOR, LLC, PONDVIEW CORP.,
and PARKFIELD PROPERTIES,

         Plaintiffs,

 -v-

THE ESTATE OF RICHARD F. DAINES,
M.D., Commissioner of the New York State
Department of Health, ROBERT P.
DOUGHERTY, Director of the New York
State Department of Health, Division of
Home and Community Based Care, JUDITH
R. MOONEY, Co-Director of the New York
State Department of Health, Division of
Home and Community Based Care,
MARYBETH FADER, Director, ACF CON
Certification Unit of the New York State
Department of Health, Division of Home and
Community Based Care,

         Defendants.

No. 16-CV-2691 (KMK)

OPINION & ORDER

Appearances:

Louis U. Gasparini, Esq.
Lynch Schwab & Gasparini PLLC
Brewster, NY
*Counsel for Plaintiffs*

Bradford S. Glick, Esq.
Office of the Attorney General of the State of New York
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

  Plaintiffs TZ Manor, LLC ("TZ Manor"), Pondview Corp. ("Pondview"), and Parkfield Properties ("Parkfield," and collectively, "Plaintiffs") bring this Action pursuant to 42 U.S.C. § 1983 alleging that various officials employed by the New York State Department of Health

(the "Department" or "DOH") ("Defendants"), effected a taking of Plaintiffs' property without just compensation in violation of the Fifth and Fourteenth Amendments, by taking a variety of actions in connection with the operation of Tappan Zee Manor, located at 51 Mountainview Avenue in Nyack, New York (the "Adult Home"). (*See* Am. Compl. ¶ 1 (Dkt. No. 15).)[1] Before the Court is Defendants' Motion To Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion"). (*See* Dkt. No. 21.) For the reasons stated herein, Defendants' Motion is granted.

## I. Factual Background & Procedural History

As the dispute underlying this Action approaches its tenth birthday, the Court assumes the Parties' familiarity with the relevant facts. And because the Court is fully acquainted with them and has had the opportunity to recount them in multiple opinions, it declines to repeat them here. A comprehensive account of the factual and procedural history of this case can be found in the Court's prior opinions. *See TZ Manor, LLC v. Daines*, 815 F. Supp. 2d 726, 730–33 (S.D.N.Y. 2011), *aff'd* 503 F. App'x 82 (2d Cir. 2012) ("*TZ Manor II*"); *TZ Manor, LLC v. Daines*, No. 08-CV-3293, 2009 WL 2242436, at *1–3 (S.D.N.Y. July 28, 2009) ("*TZ Manor I*"). What follows is an abbreviated account of the procedural history relevant to Plaintiffs' Amended Complaint and the instant Motion.

In an Opinion & Order ("Opinion") dated September 27, 2011, in reviewing Plaintiffs' takings claim, the Court found that Plaintiffs had pleaded "no . . . facts suggesting that Plaintiffs [had] satisfied the ripeness requirement, i.e. that they [had] sought compensation from" New York State, which has a "reasonable, certain and adequate provision for obtaining

---

[1] Plaintiffs brought an action against the same Defendants (as well as others not named here) in *TZ Manor, LLC v. Daines*, docketed under case number 08-CV-3293.

2

compensation." *TZ Manor II*, 815 F. Supp. 2d at 735 (alteration and internal quotation marks omitted).  The Court dismissed the takings claim "without prejudice to refiling if and when Plaintiffs take the requisite actions necessary to make the claim ripe for review on the merits." *Id*.  The Court dismissed the remainder of Plaintiffs' federal claims with prejudice.  *See id.* at 753.

On March 23, 2012, Plaintiffs filed an action in New York State Supreme Court for the County of Rockland under index number 31564/2012, seeking "compensation from . . . defendants . . . for their unlawful taking of property without just compensation."  (Am. Compl. ¶¶ 4–5.)  The case was subsequently transferred to the Court of Claims on July 29, 2014.  (*See id.* ¶ 5.)  In a decision dated June 10, 2015, Judge Thomas H. Scuccimarra of the Court of Claims dismissed Plaintiffs' state-law claims as time-barred.  (*See* Decl. of Bradford S. Glick, Esq. ("Glick Decl.") Ex. E (Dkt. No. 23).)

Plaintiffs filed their Complaint in this Court on April 11, 2016, (*see* Dkt. No. 1), and filed their Amended Complaint on August 4, 2016, (*see* Am. Compl.).  Defendants filed the instant Motion To Dismiss and accompanying papers on October 5, 2016.  (*See* Dkt. Nos. 21–23.)  Plaintiffs filed their papers in opposition on November 4, 2016, (*see* Dkt. Nos. 28–29), and Defendants filed their papers in reply on December 15, 2016, (*see* Dkt. Nos. 35–36).

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

3

(alteration and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a

4

district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

B. Analysis

In support of their Motion, Defendants contend that Plaintiffs fail to state a plausible takings claim because (1) "they did not timely pursue the available state-law remedies within the applicable statute of limitations"; (2) "they cannot establish that Defendants interfered with or deprived them of any cognizable property interest"; and (3) Defendants' actions "do[] not amount to a taking, as [their] goal was to protect the vulnerable residents of the Home." (Mem. of Law in Supp. of Defs.' Mot. To Dismiss the Am. Compl. ("Defs.' Mem.") 9, 12, 16 (Dkt. No. 22)). Defendants additionally argue that they have qualified immunity and Plaintiffs fail to allege any personal involvement of Defendants Daines, Dougherty, or Mooney. (*See id.* at 20–23.)

1. State-Law Remedies

"Before a federal takings claim can be asserted, compensation must first be sought from the state if it has a reasonable, certain and adequate provision for obtaining compensation." *Island Park, LLC v. CSX Transp.*, 559 F.3d 96, 109 (2d Cir. 2009) (internal quotation marks omitted); *see also Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 195 (1985) ("[I]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation."). Indeed, the courts have held that a "plaintiff must pursue

5

'relief under a state compensation procedure . . . even where it remains unsure and undeveloped.'" *Island Park*, 559 F.3d at 109 (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 380 (2d Cir. 1995)).

"Well-settled law in [the Second] Circuit establishes that New York does provide adequate means for obtaining compensation for a . . . taking." *Allocco Recycling, Ltd. v. Doherty*, 378 F. Supp. 2d 348, 361 (S.D.N.Y. 2005). "Tracking the Fifth Amendment to the U.S. Constitution, Article I, [§] 7 of the New York State Constitution guarantees that private property shall not be taken for public use without just compensation." *Melrose Credit Union v. City of New York*, — F. Supp. 3d — , 2017 WL 1200902, at *11 (S.D.N.Y. Mar. 30, 2017) (internal quotation marks omitted); *see also Livant v. Clifton*, 334 F. Supp. 2d 321, 326 (E.D.N.Y. 2004) (finding that "a state law action under Article I, [§] 7 of the New York State Constitution" constitutes a "reasonable certain and adequate provision[]" for seeking just compensation (internal quotation marks omitted)). Additionally, "the Second Circuit has recognized in a brief per curiam decision that an Article 78 proceeding may, in certain circumstances, potentially constitute a 'constitutionally sufficient' procedure to address a takings claim at the state level." *Melrose*, 2017 WL 1200902, at *12 (italics omitted) (citing *Vandor, Inc. v. Militello*, 301 F.3d 37, 39 (2d Cir. 2002) ("[W]e recognize that under New York State law, Article 78 is a form of proceeding available to compel public officials to comply with their responsibilities.")).

In response to Defendants' argument that Plaintiffs' claim is—as the New York State Supreme Court determined—untimely, Plaintiffs contend that "the State procedures referred to in . . . Defendants' Memorandum of Law—an Article 78 proceeding . . . and a suit under Article I, [§] 7 . . .—were not 'reasonable, certain and adequate' procedures by which . . . Plaintiffs could

have sought just compensation under the facts of this case." (Mem. of Law in Opp'n to Mot. To Dismiss Am. Compl. ("Pl.'s Opp'n") 5 (Dkt. No. 28).)

a. Article 78 Proceeding

Plaintiffs contends that "by its nature, an Article 78 proceeding is not a means by which . . . Plaintiffs could have obtained just compensation for the taking of their property" because "where the thrust of a claim is for monetary damages, an Article 78 proceeding is not the proper vehicle for seeking such monetary redress." (*Id.* at 5–7.)

Pursuant to New York Civil Practice Law and Rules ("CPLR"), in an Article 78 proceeding, "[a]ny restitution or damages granted to the petitioner must be incidental to the primary relief sought by the petitioner, and must be such as he might otherwise recover on the same set of facts in a separate action or proceeding suable in the supreme court against the same body or officer in its or his official capacity." N.Y. C.P.L.R. § 7806. "Whether the essential nature of the claim is to recover money, or whether the monetary relief is incidental to the primary claim, is dependent upon the facts and issues presented in a particular case." *Gross v. Perales*, 527 N.E.2d 1205, 1207 (N.Y. 1988); *see also Antonsen v. Ward*, 943 F.2d 198, 203 (2d Cir. 1991) (same); *Hertzel v. Town of Putnam Valley*, 17 N.Y.S.3d 42, 46 (App. Div. 2015) (same); *Greece Ridge, LLC v. New York*, 13 N.Y.S.3d 766, 767 (App. Div. 2015) (same). "Although deciding whether a monetary claim is 'incidental' to relief sought in an Article 78 proceeding is a critical and often decisive step, there is no universally accepted standard or test to be applied in making such a determination." *Safety Grp. No. 194 v. New York*, Cl. No. 101826, 2001 WL 939747, at *1 (Ct. Cl. Apr. 11, 2001). "'The short, and unhelpful, answer appears to be that some types of challenges are appropriately made by way of an Article 78 proceeding [and] must be brought in that forum only, while others may be asserted in either [the] Supreme

7

Court or the Court of Claims—and sometimes two separate proceedings may be required.'" *Metro. Taxicab Bd. of Trade v. N.Y.C. Taxi & Limousine Comm'n*, 958 N.Y.S.2d 569, 573–74 (Sup. Ct. 2013) (quoting *Safety Grp. No. 194*, 2001 WL 939747, at *1), *aff'd*, 982 N.Y.S.2d 88 (App. Div. 2014).

Plaintiffs argues that "the crux of the . . . Amended Complaint is to seek monetary redress for . . . Defendants' unconstitutional taking of private property without any compensation and, therefore, an Article 78 proceeding was not an adequate [s]tate procedure for seeking just compensation." (Pl.'s Opp'n 8; *see also id.* at 8–9 ("Since the essential nature of the claim in . . . Plaintiffs' Amended Complaint is to recover money damages for . . . Defendants' unconstitutional taking of the Adult Home without just compensation, an Article 78 proceeding was not a proper vehicle for seeking monetary redress under New York law." (alteration and internal quotation marks omitted)).) However, a party's "own characterization of a demand for relief will not—or at least should not—control. Whether [an] action constitutes one for money damages or damages that are merely incidental to an equitable determination is not determined by how claimant characterizes it in his pleadings, but on the actual issues presented." *Safety Grp. No. 194*, 2001 WL 939747, at *1 (alteration and citations omitted). "Thus, attempts to characterize a claim that falls within the jurisdiction of [the] Supreme Court as some other type of action so as to bring it within the jurisdiction of [a particular court] will not succeed, and the opposite is true as well." *Id.* As this Court has previously held, "[i]n an Article 78 proceeding to remedy an alleged taking under New York law, . . . just compensation would obviously be the primary relief sought, and that type of relief is often sought in such proceedings." *TZ Manor I*, 2009 WL 2242436, at *7 (collecting cases in which parties brought Article 78 proceedings to recover damages resulting from alleged taking of property without just compensation).

8

The Court agrees with the Court of Claims that "even if [Plaintiffs] seek monetary relief in the form of unpaid rent," the ultimate question is "whether the DOH acted properly in appointing [The Long Hill Alliance Company, Inc. ('Long Hill')] as temporary receiver, in granting Long Hill continued licensure as operator, acted unfairly in not granting licensure to claimants or their agents, and in not 'forcing' Long Hill to pay rent." (Glick Decl. Ex. E, at 10.) "Indeed, the language in the claim tracks that of any Article 78 proceeding asserting that the 'body or officer' has acted arbitrarily or capriciously, or in excess of jurisdiction, or has failed to act and should do so." (*Id.*; *see* Am. Compl. ¶ 88 ("[D]efendants['] . . . actions . . . arbitrarily and capriciously . . . conferring upon Long Hill . . . total and exclusive continuing possession and operation of the Adult Home, and confiscating and redirecting all rents and revenues . . . without just compensation . . . were arbitrary, capricious, irrational and in violation . . . of . . . [P]laintiffs' constitutional guaranty not to be deprived of property without just compensation . . . .").) And while it is possible that Plaintiffs would not have attained the relief it sought in such a proceeding, "the law only requires that a remedy *potentially* is available under the state constitution's provision." *TZ Manor I*, 2009 WL 2242436, at *6 (internal quotation marks omitted). Indeed, were a state court in an Article 78 proceeding to agree with Plaintiffs that Defendants' actions were arbitrary and capricious in appointing Long Hill, the claim for damages in the amount of "rent . . . for the time period from March 3, 2006 to May 16, 2008," (Am. Compl. ¶ 89), could be converted to a plenary action, *see, e.g.*, *Ingram v. Nassau County*, 927 N.Y.S.2d 106, 109 (App. Div. 2011) ("We note that the petitioner's cause of action seeking damages for alleged violations of her constitutional rights was not properly before the court in the context of this CPLR [A]rticle 78 proceeding inasmuch as it is not incidental to the primary relief sought. Although we are empowered to convert this claim into a plenary action, we

9

decline to do so, as it is without merit." (citations omitted)); *Metro. Taxicab*, 958 N.Y.S.2d at 575 ("A claim for monetary relief that is not incidental relief to be awarded pursuant to CPLR [§] 7806 *may be severed and converted to a plenary action*." (emphasis added)).[2]

Plaintiffs did not bring an Article 78 proceeding within the time proscribed by New York State law, *see* N.Y. C.P.L.R. § 217(1) ("[A] proceeding against a body or officer must be commenced within four months after the determination to be reviewed becomes final and binding upon the petitioner or the person whom he represents in law or in fact, or after the respondent's refusal, upon the demand of the petitioner or the person whom he represents, to perform its duty."), and, accordingly, their takings claim is not ripe, *see Williamson*, 473 U.S. at 195; *see also Gathers v. Artus*, 873 N.Y.S.2d 753, 754 (App. Div. 2009) (dismissing a petition as "untimely given that [the petitioner] failed to commence [his] proceeding until after the applicable four-month statute of limitations had expired"); *Maddox v. State Univ. of N.Y. at Albany*, 819 N.Y.S.2d 605, 607 (App. Div. 2006) (affirming a motion to dismiss where the petitioner's claims were untimely pursuant to CPLR § 217(1)).

---

[2] Plaintiffs could also have brought a hybrid proceeding, encompassing both an Article 78 petition and a plenary damages action. *See, e.g.*, *Blue Island Dev., LLC v. Town of Hempstead*, 38 N.Y.S.3d 255, 257 (App. Div. 2016) (noting the plaintiff commenced "a hybrid CPLR [A]rticle 78 proceeding/declaratory judgment action" in part, seeking "relief pursuant to the takings clauses of the state and federal constitutions"); *Genser v. Bd. of Zoning & Appeals of Town of N. Hempstead*, 885 N.Y.S.2d 327, 329 (App. Div. 2009) ("[The plaintiff] commenced this hybrid proceeding pursuant to CPLR [A]rticle 78 to review the determination of the Zoning Board, and action to declare, in the event that the determination was not annulled, that [his] property was taken without just compensation."); *see also Metro. Taxicab*, 958 N.Y.S.2d at 574 ("[S]ometimes two separate proceedings may be required." (internal quotation marks omitted)).

Furthermore, as the Court noted in *TZ Manor I*, Plaintiffs also "could have brought an Article 78 proceeding to force . . . Defendants to grant TZ Manor its sought-after operating license. After all, the main theme of Plaintiffs' claim here is that the State Defendants acted ultra vires in keeping Long Hill in place and in letting Long Hill pay itself without honoring its lease obligations to Plaintiffs." 2009 WL 2242436, at *7 n.5.

### b. Article I, § 7 Action

Plaintiffs aver that "even if . . . [their] assertion of the takings claim had been timely made, the Court of Claims would still have dismissed that claim based upon the . . . ground . . . [that] an Article 78 proceeding should have been brought in supreme court." (Pl.'s Opp'n 11.) In light of the fact that "the Court of Claims has exclusive jurisdiction over suits seeking primarily money damages against a State defendant," Plaintiffs argues, "an Article I, [§] 7 action was not a 'reasonable, certain and adequate' state procedure." (*Id.*)

As noted above, Plaintiffs' characterization of this suit as one "seeking primarily money damages," (*id.*), does not control, *see Safety Grp. No. 194*, 2001 WL 939747, at *1. Furthermore, the adverse ruling Plaintiffs faced in the Court of Claims that the lawsuit "should have been addressed in an Article 78 proceeding," (Glick Decl. Ex. E, at 11), does not render an action under Article I, § 7 inadequate or unreasonable. As this Court has previously noted, "[e]ven assuming . . . Plaintiffs' Article I, [§] 7 claim would fail *as a matter of law*, this does not mean that the New York State Constitution lacks 'a reasonable, certain and adequate provision for obtaining compensation' within the meaning of *Williamson*." *TZ Manor I*, 2009 WL 2242436, at *6 (emphasis added). "Rather, the law only requires that a remedy *potentially* is available under the state constitution's provision, not that Plaintiffs' case under state law would survive summary judgment in state court." *Villager Pond*, 56 F.3d at 380 (emphasis added) (internal quotation marks omitted). The Court has previously noted that even a ruling by the New York Court of Appeals that the Court of Claims had sole jurisdiction over a claim for just compensation due to a taking of property, did not disturb this finding. *See TZ Manor I*, 2009 WL 2242436, at *6 (citing *Birnbaum v. State*, 541 N.E.2d 23, 24 (N.Y. 1989) ("The Appellate Division . . . determined . . . that the Court of Claims had sole jurisdiction regarding [the]

11

respondents' claim that they were 'entitled to be compensated for the actual costs for providing the services for the patients' during the receivership period, and, therefore, . . . dismissed [the] respondents' claim for compensation. This court affirmed . . . ." (citations and alteration omitted)). "[E]ven impossibility of success under the State provision does not make a federal action ripe." *Id.* (citing *Vandor*, 301 F.3d at 39).

As there were "reasonable, certain and adequate provision[s] for obtaining compensation," *Island Park*, 559 F.3d at 109 (internal quotation marks omitted), and Plaintiffs failed to take advantage of these remedies within the applicable statutes of limitation, the Court finds, once again, that Plaintiffs' takings claim is not ripe.

### 2. Plaintiff's Legally Cognizable Property Interest

Defendants argue that "[e]ven if Plaintiffs[] had timely pursued their state remedies, their takings claim would fail because they cannot establish that Defendants interfered with or deprived them of any cognizable property interest." (Defs.' Mem. 12.)

"The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation." *Williamson*, 473 U.S. at 194. In order to state a takings claim under § 1983, a plaintiff must allege "(1) a property interest, (2) that has been taken under color of state law, (3) without just compensation." *Guichard v. Town of Brookhaven*, 26 F. Supp. 3d 219, 225 (E.D.N.Y. 2014).

"The law recognizes two species of takings: physical takings and regulatory takings." *Buffalo Teachers Fed'n v. Tobe*, 464 F.3d 362, 374 (2d Cir. 2006). A regulatory taking occurs "when the government acts in a regulatory capacity." *Id.* "The gravamen of a regulatory taking claim is that the state regulation goes too far and in essence effects a taking." *Id.* (internal quotation marks omitted). Courts further divide regulatory takings into categorical and non-

categorical takings. *See Sherman v. Town of Chester*, 752 F.3d 554, 564 (2d Cir. 2014). "A categorical taking occurs in 'the extraordinary circumstance when *no* productive or economically beneficial use of land is permitted.'" *Id.* (quoting *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 330 (2002)). "Anything less than a complete elimination of value, or a total loss, is a non-categorical taking, which is analyzed under the framework created in *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978)." *Id.* (internal quotation marks omitted).

As the Court previously noted in both *TZ Manor I* and *TZ Manor II*, "Plaintiffs did not have a 'property right' in receiving an operating license for the Adult Home." *TZ Manor II*, 815 F. Supp. 2d at 740 (citing *TZ Manor I*, 2009 WL 2242436, at *9). In *TZ Manor II*, the Court discussed at length why certain of Plaintiffs' theories for relief were flawed because "Plaintiffs [were] claiming that they were deprived of property the entitlement to which only an operating license would guarantee." *Id.* at 741. The Court declines to repeat that discussion here, but to the extent Plaintiffs argue that Defendants "interfered with [their] reasonable investment-backed expectations," (Pl.'s Opp'n 18), the Court finds this argument unavailing for the reasons previously stated. Plaintiffs' reasonable investment backed expectations—that they would receive rent and revenue for the time period from March 2, 2006 to May 16, 2008—necessarily assumes that Plaintiffs' would have a license to operate the Adult Home during this time. This claim "depends on the false assertion that TZ Manor had a property 'right' to an operating license, which it did not." *TZ Manor II*, 815 F. Supp. 2d at 741.

However, as it noted in *TZ Manor II*, the Court now reaffirms that "Plaintiffs' most persuasive property rights theory is also their simplest—that Long Hill physically occupied Plaintiffs' property either pursuant to DOH directive or by agreement with DOH without

13

Plaintiffs' consent." *TZ Manor II*, 815 F. Supp. 2d at 743. (*See* Am. Compl. ¶ 60 ("Defendants abused their purported regulatory powers, and effectively bestowed special benefits including possession upon Long Hill."); *id.* ¶ 88 ("[D]efendants . . . forc[ed] . . . [P]laintiffs to cede all of their rights and indicia of ownership, possession and operation of the Adult Home and arbitrarily and capriciously [gave] and confer[ed] upon Long Hill, acting on behalf and as agent of . . . Defendants, total and exclusive continuing possession and operation of the Adult Home."); *see also* Pl.'s Opp'n 14 ("Defendants . . . unlawfully permitted and authorized Long Hill for more than two years to continue to operate, possess and control the Adult Home to the complete exclusion of . . . Plaintiffs without paying any compensation to them."); *id.* at 17 ("[Plaintiffs] have sufficiently pled a takings claim in the most egregious scenario—physical occupation and site control of . . . Plaintiffs' private property by Long Hill to the complete exclusion of . . . Plaintiffs."); *id.* at 18 ("[T]he illegal conduct of . . . Defendants in permitting and sanctioning Long Hill's continued control over the Adult Home for more than two years . . . was tantamount to a 'physical invasion' by . . . Defendants . . . ."); *id.* at 19 ("Defendants authorized and permitted Long Hill's physical occupation and site control of the Adult Home."); *id.* ("[A]t issue here is a physical taking of . . . Plaintiffs' private property.").)

"Under the traditional conception of property, the most important of the various rights of an owner is the right of possession which includes the right to exclude others from occupying or using the space." *Seawall Assocs. v. City of New York*, 542 N.E.2d 1059, 1063 (N.Y. 1989). "[V]irtually all physical invasions are deemed takings," *First English Evangelical Lutheran Church of Glendale v. Los Angeles County*, 482 U.S. 304, 329 (1987) (citing *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982)), and the Court agrees with Plaintiffs that the temporary nature of such a physical occupation does not render it permissible,

14

*see id.* at 331–32 ("[T]he state certainly may not occupy an individual's home for a month and then escape compensation by leaving and declaring the occupation 'temporary.'"). Thus, the Court again finds that Plaintiffs' Amended Complaint "state[s] facts suggesting Plaintiffs were deprived of their exclusive 'possession' and 'occupancy' of their property, as Long Hill was present there allegedly at DOH's behest and against Plaintiffs' will." *TZ Manor II*, 815 F. Supp. 2d at 743; *see also id.* at 740 ("[T]he only deprivation of a constitutionally protected 'property right' Plaintiffs (arguably) allege adequately is Long Hill's presence and operation of a facility located on property that Plaintiffs owned against Plaintiffs' will." (emphasis omitted)).

However, despite the fact that Plaintiffs have sufficiently pleaded a legally cognizable property interest, the Court disagrees that they "are entitled to recover rent from . . . [D]efendants for the time period from March 3, 2006 to May 16, 2008" in the amount of $4,903,401.95. (Am. Compl. ¶ 89; *see also id.* ¶ 70 ("[Defendants] erred by not recognizing the need to determine a proper rent, and not requiring the payment to . . . [P]laintiffs of proper rent as due compensation for the taking of their property.").) The Court addressed these arguments in depth in *TZ Manor II*, and the rationale applies equally to Plaintiffs' instant pleading:

> [T]he Amended Complaint does not allege anything . . . Defendants did to prevent Pondview and Parkfield, the owners of the Property, from collecting whatever rents they were owed by Long Hill, if any. To the extent the claim is that Long Hill's failure to pay deprived Plaintiffs of the rents they *should* have received from it, the Amended Complaint does not allege that the owners had any contract with Long Hill *obligating* it to pay . . . . And, even assuming Long Hill *was* obligated to pay Plaintiffs on some theory, . . . the Amended Complaint alleges no facts suggesting its failure to do so was actionable under § 1983.

815 F. Supp. 2d at 741.

Plaintiffs' additional contentions that (1) "[t]he Department was required to first revoke the operating certificate issued to the prior receiver . . . and then to get their own receiver under the provisions of § 461-f(4)(a)" and (2) "the commissioner was required to apply to the

15

Supreme Court for their own receiver and to require the operators, owners and lessors to show cause why the commissioner, or its designee, should not be appointed receiver to take charge of the facility," (Am. Compl. ¶ 78), have been previously rejected by this Court: "[T]here is no basis for the premise of Plaintiffs' argument[] that DOH *had* to have used *this* procedure in the circumstances of this case," *TZ Manor II*, 815 F. Supp. 2d at 741.

> Indeed, the statutes make clear that appointment of a receiver, either by agreement between DOH and the operator or via court order, is a decision entirely within DOH's discretion. *See* [N.Y. Soc. Servs. Law] § 461-f(1) ("It *may* become necessary under certain circumstances to authorize the continuing operation of such facility for a temporary period by a court appointed receiver, *at the discretion of the commissioner*, or a receiver *approved by* DOH." (emphasis added)); *id.* § 461-f(6) ("Nothing contained in this section shall be construed to require the commissioner to seek the appointment of a receiver or to assume the responsibilities of a receiver directly or indirectly through his designee; nor shall this section authorize any court to compel the commissioner to assume the responsibilities of a receiver or to appoint a designee to assume such responsibilities.").

*Id.* at 741–42 (alterations omitted).

Plaintiffs' argument that "[h]ad the Department complied with the statutory mandate contained within the Social Services Law, Pondview would have been afforded the rent due to it" pursuant to § 461-f(4)(b), has also been discredited. (Am. Compl. ¶ 80; *see id.* ¶ 81 ("[T]he requirement to pay rent is clearly set forth within § 461-f(4)(b), which requires that the Department determine a reasonable monthly rental for the facility.").) Plaintiffs' argument fails because "the 'reasonable rent' provision, § 461-f(4)(b), only applies when DOH 'revokes or temporarily suspends the operating certificate of [a] facility and the commissioner determines that the appointment of a receiver is necessary.'" *TZ Manor II*, 815 F. Supp. 2d at 741 (quoting N.Y. Soc. Servs. Law § 461-f(4)(a)). Here, Plaintiffs allege that Defendants *failed* to follow the procedures provided in § 461-f(4)(a), (*see* Am. Compl. ¶ 79 ("Instead[,] the [D]epartment chose to not revoke the operating license of Long Hill . . . and to *not* request the court for the

16

appointment of their own receiver under [§] 461[-]f(4)(a)."), and as noted above, there was no requirement that Defendants do so, *see TZ Manor II*, 815 F. Supp. 2d at 742. Thus, the Court once again finds that "Plaintiffs had no entitlement to the 'reasonable rent' referred to in § 461-f(4)(b)," *id*., the very relief sought in this Action, (*see* Am. Compl. ¶ 89 ("By reason of the [unlawful taking of property in violation of the Takings Clause] . . . [P]laintiffs are entitled to recover rent from . . . [D]efendants for the time period from March 3, 2006 to May 16, 2008, at the lease amount of $154,618.65 monthly, plus real estate taxes, on a 'triple-net' basis, . . . totaling $4,903,401.95, with interest.")).[3]

### III. Conclusion

For the foregoing reasons, Defendants' Motion To Dismiss is granted. In the context of a non-ripe claim, "[a]lthough a dismissal without prejudice would typically be appropriate, Plaintiff[s'] time to seek just compensation has passed, and therefore [their] claim[] can never be ripe. . . . [T]he statute of limitations to commence an Article 78 proceeding is four months. And at most, Plaintiff[s] would be entitled to a three-year statute of limitations, which has also passed." *Qing Dong v. Town of North Hempstead*, No. 13-CV-255, 2013 WL 6407724, at *4 (E.D.N.Y. Dec. 9, 2013) (citation omitted); *see also Vandor*, 301 F.3d at 39 ("[The plaintiff] does not say how [his claim] can ever ripen. Since Article 78 is constitutionally sufficient . . . we may therefore dismiss the claim with prejudice.").) Accordingly, Plaintiffs' claim is dismissed with prejudice.

---

[3] In light of the Court's finding that Plaintiffs failed to timely pursue available state-law remedies and are not entitled to the relief sought in this Action, the Court declines to address Defendants' arguments as to qualified immunity and personal involvement.

17

The Clerk of Court is respectfully requested to terminate the pending Motion, (*see* Dkt. No. 21), and close this case.

SO ORDERED.

DATED: September 27, 2017
             White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE